**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-155 |
| | ) | Judge Nora Barry Fischer |
| PATRICK JOSEPH KOFALT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.  INTRODUCTION

Presently before the Court is a motion to suppress evidence filed by Defendant Patrick Joseph Kofalt ("Defendant") on July 3, 2012. (Docket No. 37). Defendant seeks to suppress child pornography found on his computers that were seized by Pennsylvania State Police upon execution of a search warrant at his residence in Enon Valley of Lawrence County, Pennsylvania on December 2, 2009. (*Id.*). Defendant claims that the search warrant obtained by the police was not supported by probable cause and, alternatively, that the Affidavit, upon which the warrant was granted, omitted material facts in violation of Defendant's Fourth Amendment rights. (Docket Nos. 37, 44, 46). The Government opposes Defendant's motion. (Docket No. 38, 45, 46).

Pre-hearing briefs were submitted by both parties and a suppression hearing was held on August 8, 2012. (Docket Nos. 37, 38, 46). The transcript of the hearing has been produced and fully considered by the Court. (Docket No. 46). The Court also ordered the parties to submit proposed findings of fact and conclusions of law. (Docket No. 41). Defendant filed his proposed findings of fact and conclusions of law on September 20, 2012, (Docket No. 43), and the Government filed its proposed findings of fact and conclusions of law on October 4, 2012. (Docket No. 45).

Upon consideration of the parties' submissions, the evidence presented during the motion hearing and for the following reasons, Defendant's motion to suppress [37] is denied.

## II. BACKGROUND

### A. *Charges and Potential Penalties*

Defendant was charged by Indictment with two counts: one count of Receipt of Material Depicting the Sexual Exploitation of a Minor, on or before December 2, 2009, in violation of 18 U.S.C. § 2252(a)(2); and one count of Possession/Access with Intent to View of Material Depicting the Sexual Exploitation of a Minor, on or about December 2, 2009, in violation of 18 U.S.C. § 2252(a)(4)(B).[1] (Docket No. 1). The Indictment alleges that Defendant used the following computer equipment to commit or to promote the commission of said violations and the Government seeks forfeiture of same pursuant to 18 U.S.C. § 2253(a)(3): an 80 gigabyte Maxtor hard drive; a 160 gigabyte Western Digital USB drive; a 120 gigabyte Hitachi laptop hard drive; an 80 gigabyte Seagate laptop hard drive; a 250 gigabyte Hitachi laptop hard drive; a blue Navigon SD memory card; a 4 gigabyte PNY SD memory card; a 2 gigabyte black SanDisk Cruzer thumb drive; a Norcent DCC-725 digital camera, and assorted storage media. (*Id*. at 3).

A conviction at Count One carries with it a potential term of imprisonment of not less than five years and no greater than twenty years, and a conviction at Count Two may result in a potential term of imprisonment of ten years. (Docket No. 2 at 4-5). However, if defendant has a prior conviction under 18 U.S.C §§ 71, 109A, 110, 117 or 10 U.S.C. § 920 or under any state law relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment or transportation of child pornography, then the sentence of imprisonment for Count One is no less

---

[1] The terms of 18 U.S.C. § 2252 are defined by 18 U.S.C. § 2256.

than fifteen years nor more than forty years and Count Two is no less than ten years nor more than 20 years. (*Id.*)

*B. Findings of Fact*

The uncontroverted evidence offered at the August 8, 2012 suppression hearing established the following facts.[2] The Government introduced its Exhibit 1 and 2 into evidence without objection from the defense and said exhibits were admitted. (Docket No. 40 at 7-8). Exhibit 1 consists of an Application for Search Warrant and Authorization and a supporting Affidavit of Probable Cause. (Govt. Ex. 1, Docket No. 40-2). Exhibit 2 consists of the Forensic Interview Report taken by Janice Wilson at the Children's Advocacy Center on December 2, 2009. (Govt. Ex. 2, Docket No. 40-3).

Pennsylvania State Police Trooper Harry S. Gustafson Jr. ("Gustafson") presented an Application for Search Warrant and Authorization with supporting Affidavit to the Hon. Jerry G. Cartwright, Jr., Magisterial District Judge, on December 2, 2009, requesting that a warrant be issued to search a residence at 1157 Moravia Rd. Enon Valley, PA 16120. (Govt. Ex. 1 at 1). The warrant was issued upon a finding of probable cause by Magistrate Judge Cartwright. (*Id.*). Specifically, the warrant identified the items to be searched and seized as:

> All computer hardware, including but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical similar computer impulses or data. Any computer processing units, internal and peripheral storage devices, (such as fixed disks, external hard disks, floppy disk drives, and diskettes, tape drives, tapes, and optical storage devices), peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display

---

[2] At the suppression hearing, neither party offered any witness testimony. However, both parties submitted documentary evidence which became exhibits to the hearing. It is well-settled that at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Hill*, Cr. No. 07-371, 2008 WL 2367185, *5 (W.D. Pa. 2008) (quoting *United States v. Richardson*, 501 F.Supp.2d 724, 734 (W.D.Pa. 2007) (citations omitted)).

monitors, and optical readers), and related communication devices such as modems, cables, and connections, recording equipment, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware.

Any computer software, software documentation, operating logs and/or hardware documentation.

Any documents that shows [*sic*] ownership or who resides at the place to be searched.

Any data, images, electronic communications, and/or any other electronic information contained on, or within, the computer system/s, computer/s computer components, storage media, peripherals and/or computer software relating in any way to any images, photographs or depictions of Child Pornography (as defined herein and in section 6312 of the Crimes Code).

Any materials, including but not limited to; manuals, materials, pamphlets, books, scrapbooks, notebooks, papers, or data which contain information regarding logins, passwords, URL names, Internet site names, Internet account or e-mail account information.

Any and all image and/or video files (conventionally or digitally produced), photographic and video camera equipment (conventional or digital), negatives, slides, video tapes, motion picture films, magazines, books, or drawings of children or adults engaged in sexual activity or sexually suggestive poses or of children nude, semi-nude, or wearing underwear with no outer garment covering the underwear; Any photographs, printed copies, pictures, images, visual representations, or figures depicting Child Pornography (as defined herein and in section 6312 of the Crimes Code).

(*Id.* at 1-2). The premises to be searched were described as:

1157 Moravia Rd. North Beaver Twp., Enon Valley, PA 16120
Two story blue/grey house

(*Id.* at 1). The warrant also identified "Patrick J. KOFALT" as the "name of owner, occupant or possessor of the premises to be searched" on the application. (*Id.*). Finally, the warrant incorporates by reference an attached sworn Affidavit by Trooper Gustafson. (*Id.* at 3).

The entirety of the Affidavit of probable cause states that "probable cause belief is based upon the following facts and circumstances":

> Your affiant [State Trooper Harry Gustafson] has been a member of the Pennsylvania State Police for just over 18 years and is currently assigned to the criminal investigation unit at the New Castle Barracks.
>
> On 12/02/09 I was assigned to attend a forensic interview of a 6 yr old male at the Children's Advocacy Center at Jameson South. This interview was being conducted by Jan WILSON and Lawrence County Children and Youth Services following the juvenile disclosing to school officials at Brighter Visions on 11.30.09 that while he was at Patrick KOFALT's house, the subject would tickle his private areas and take nude pictures of him.
>
> During the interview, the juvenile confirmed that KOFALT took pictures of him in his underwear and without his underwear. He also stated that KOFALT showed him pictures of nude people on his computer.
>
> Based on your affiant's knowledge, training in various sex crimes, and experience, your affiant knows that child pornographers generally prefer to store images of child pornography in electronic form as computer files. The computer's ability to store images in digital form makes a computer an ideal repository for pornography. A small portable disk can contain hundreds or thousands of images of child pornography, and a computer hard drive can contain tens of thousands of such images at very high resolution. The images can be easily sent to or received from other computer users over the Internet. Further, both individual files of child pornography and the disks that contain the files can be mislabeled or hidden to evade detection.
>
> Based upon your affiant's knowledge, training and experience, your affiant knows that searching and seizing information from computers often requires officers to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:
>
> Your affiant believes that images of Child Pornography will be found on the computer/s and/or other storage media of the residence of Patrick J KOFALT 1157 Moravia Rd. Enon Valley

5

PA, which will lead to the identity of the individual/s who possesses child pornography. Your affiant believes that there is probable cause to believe that these items constitute evidence and instrumentalities of violation [sic] for the crime of Title 18, Section 6312, Sexual Abuse of Children. Your affiant learned through training and experience, those persons engaged in the distribution and possession of pornographic/child pornographic materials often maintain collections of such material and that such material is used as a resource for furtherance of the exploitation of juveniles. The collections are kept by these persons for long periods of times, years at times.

Your affiant asserts the named items are evidence of criminal activity and as such are subject to search and seizure."

(*Id.*). The warrant was executed at 6:50 p.m. on December 2, 2009. (*Id.* at 4).

Exhibit 2 is composed of Jan Wilson's notes from the forensic interview of a six-year-old boy ("Minor") on December 2, 2009 which was attended by Gustafson and a Children and Youth Services caseworker. The interview was held as a result of Minor disclosing to school officials that Defendant tickled his private areas and took nude pictures of him. (Govt. Ex. 2). Wilson's notes reveal the following facts from the interview. Minor, who has "rather severe behavioral problems," attends Brighter Visions, a school for children with special needs. (*Id.* at 1). The interview took place at the Children's Advocacy Center at Jameson South. (*Id.*). In the waiting room, Wilson briefly spoke with Minor, who continued chatting while he willingly walked into the interview room. (*Id.*). However, once in the room, Minor began acting up by continuously walking around, bouncing around on the furniture, spilling a container of Play-Doh on the desk and attempting to dump crayons everywhere. (*Id.*). He had difficulty maintaining focus on any one topic for a period of time and was distracted by everything in the room. (*Id.* at 2). He also opened the door several times wishing to leave, but upon request, agreed to stay until attempting to leave again shortly thereafter. (*Id.*).

When asked who lived with him, Minor said Haley, whose mom has a baby, but then immediately corrected himself that Haley did not live there and only comes over to visit. (*Id.* at 1). To secure comfort in the interview setting, he was asked and answered questions about what he did for fun and about his school. (*Id.*). Wilson then went over "Truth vs. Lies" and "Morality" tasks with Minor, who "correctly identified which child was telling the truth in all four "Truth vs. Lies" tasks; and … which child was going to get in trouble (because of lying) in all four "morality" tasks." (*Id.* at 2). He then agreed to tell her "only things that are true while [they] were talking." (*Id.*). When asked if he went to any of his neighbors' houses, he answered that he visits Defendant's and volunteered that he sometimes spent the night there. (*Id.*). Minor explained that he enjoys going to Defendant's house because he likes riding bikes and watching movies there. (*Id.*). When asked if he ever saw movies where people were nude, Minor answered yes, on Defendant's computer. (*Id.*). Minor disclosed that Defendant would take pictures of him in his underwear and sometimes without. (*Id.*). These photos took place both inside and outside the home. (*Id.*). After being asked if anyone ever touched him in a way that made him uncomfortable, Minor, without being questioned or prompted, demonstrated that Defendant would masturbate and say, "[l]ook how big it gets." (*Id.*). Finally, Wilson attempted to elicit additional information regarding whether anyone touched Minor's privates, but he did not provide further information. (*Id.*).

III. DISCUSSION

Defendant argues that Gustafson's Affidavit and the Search Warrant violated his right to be "secure in [his] person, house…and effects against unreasonable search and seizures" for two reasons: lack of probable cause, as averred in the Affidavit and, alternatively, that Gustafson knowingly, and willfully, or with reckless disregard for the truth omitted material facts from the

Affidavit in violation of Fourth Amendment principles as set forth in *Franks v. Delaware*, 438 U.S. 154 (1978). (Docket No. 37 at ¶¶ 8-10). Defendant believes there was insufficient probable cause because the testimony of Minor was not credible, and that the Minor's statements, even if credible, would not describe any crime. (*Id*. at 15). Further, Defendant contends that Gustafson omitted the following material information from his Affidavit:

> 1) That the six year old has "rather severe behavioral problems", as was manifest, in part, in his erratic behavior during the interview,
> 2) That he attends a school for children with special needs,
> 3) That contrary to what he was reported to have said at his special school, and contrary to what is otherwise averred in the Affidavit of Probable Cause, he did not, during the forensic interview, say that Patrick Kofalt had ever tickled his private parts or otherwise touched him, and
> 4) That when first asked who lives at his house, he falsely answered "Haley", only to then say "[she] doesn't live there; she comes over to visit."

(*Id*. at 13). The Government maintains that probable cause is established based upon the operative facts stated in Gustafson's Affidavit. (Docket No. 38 at 8-9). It argues that statements made by the Minor to the school counselor were corroborated by the forensic interview that took place and that the age of the child is not relevant to the determination of probable cause. (*Id*. at 10). Additionally, the Government contends that Defendant has not met his burden of proving that Gustafson omitted the supposed material facts knowingly and willfully, or with reckless disregard for the truth. (*Id*. at 15).

### A. Probable Cause Determination

Defendant first avers that the evidence seized at 1157 Moravia Road was obtained in violation of his Fourth Amendment rights, which provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV.

Here, a warrant was obtained by State Police from Magistrate Cartwright, who found that the application and supporting Affidavit established probable cause to search 1157 Moravia Road in order to locate items believed to be in possession of Defendant based upon Minor's accusations. (Govt. Ex. 1). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the *initial* probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (emphasis in original). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011). Still, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).

A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found." *Conley*, 4 F.3d at 1205. In conducting this assessment, a

reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record." *Jones*, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238-39. Further, "probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Miknevich*, 638 F.3d at 182. (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)) (internal quotations omitted). Proof beyond a reasonable doubt is not required. *Id*.

Defendant first argues that probable cause could not be found based upon Minor's statements made in the presence of Gustafson at the interview as described in the Affidavit: that Defendant took pictures of him with and without underwear and that he showed him naked pictures on the computer. (Docket No. 37 at ¶ 7). He believes that the act of taking pictures of a naked child by itself does not amount to a finding of probable cause to issue a warrant. (Docket No. 44 at 9). His argument relies primarily upon the statutory definition of "sexually explicit conduct" as used by 18 U.S.C. §§ 2252(a)(2) and 2253(a)(4)(B).[3] (*Id.* at 1). However, as the Government argues, Defendant is mistaken that this Court must analyze whether the Affidavit of

---

[3] 18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as actual or simulated:

    (i)  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
    (ii)  bestiality;
    (iii) masturbation;
    (iv) sadistic or masochistic abuse; or
    (v)  lascivious exhibition of the genitals or pubic area of any person

probable cause is sufficient with reference to the definitions set forth in the Federal statute. Indeed, it is well-settled that this Court is to evaluate the presence of probable cause "by referring to the elements of the state crime at issue in the search warrant." *United States v. Diyn*, 2008 WL 2795942 at \*5 (W.D.Pa. 2008); *see also United States v. Tracey*, 597 F.3d 140 (3d Cir. 2010) (reviewing District Court's motion to suppress decision by examining probable cause from a warrant under 18 Pa.C.S. § 6312 where Defendant allegedly violated 18 U.S.C. § 2252(a)). Here, the search warrant and Affidavit state that the evidence to be seized from Defendant's computers and related equipment were possessed in violation of 18 Pa.C.S. § 6312. Therefore, the Court must apply Pennsylvania's statutory definitions in its analysis of the Magistrate's finding of probable cause and not the Federal definitions as Defendant suggests.

To find probable cause for an 18 Pa.C.S. § 6312 violation, law enforcement must supply facts or circumstances in an affidavit that would lead one to reasonably believe that a suspect photographed, disseminated photographs, intentionally viewed or knowingly possessed photos of a "child under the age of 18 years engaging in a prohibited sexual act." 18 Pa.C.S. § 6312(b)-(d).[4] In pertinent part, § 6312(g) defines a "prohibited sexual act," as including "nudity if such nudity is depicted *for the purpose of sexual stimulation or gratification* of any person who might view such depiction." 18 Pa.C.S. § 6312(g) (emphasis added). Comparing the language of the

---

[4] 18 Pa.C.S. § 6312 – Sexual abuse of children, in relevant part:
    **(b) Photographing, videotaping, depicting on computer or filming sexual acts.--** … Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act is guilty of a felony of the second degree.
    **(c) Dissemination of photographs, videotapes, computer depictions and films.--**
        (1) Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.
    **(d) Child pornography.--**
        (1) Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

two statutes, the state statute plainly criminalizes a broader scope of conduct than the federal statute upon which Defendant relies. A violation of the Pennsylvania statute requires only a naked picture of a minor, while the image must be more explicit to violate the Federal statute.

Defendant argues that taking naked pictures of his minor neighbor is an innocent act and would be no different than a parent taking a photo of her child undressed for a bath. (Docket No. 46 at 43-44). Admittedly, a parent having a few pictures of her children without clothes for various reasons may be innocent. Here, the Affidavit does not suggest that Defendant is Minor's father or a relative; a reading of the Affidavit shows that Defendant is most likely a neighbor. The Affidavit also states that when photographed by Defendant, Minor would be wearing, at most, his underwear. (Govt. Ex. 1 at 3). Common sense dictates that it would be reasonable for a magistrate to believe that a neighbor, who takes naked pictures of a minor, could be doing so for the "purpose of sexual stimulation or gratification" as provided in 18 Pa.C.S. § 6312 and that evidence of such a crime could be found upon Defendant's property. Without further support, Defendant's argument is not credible, especially when it fails to take into account the fact that the Affidavit also states Defendant has shown Minor images of naked people on his computer. (Govt. Ex. 1 at 3). In this Court's estimation, the magistrate judge had a "substantial basis for … conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238.

Indeed, there is sufficient evidence in the Affidavit to establish that Gustafson reasonably believed that child pornography could be found at Defendant's residence on his computer and other related equipment. To this end, Gustafson stated that Defendant took pictures of Minor with and without underwear on and nude pictures were shown to the boy on the Defendant's computer. The Affidavit also sets forth Gustafson's experience and training in various sex crimes including his understanding of where such evidence is typically stored or held by possessors of

this material: i.e. on a computer. Finally, the Affidavit recounts that the facts were compiled as a result of the trooper's observation of the forensic interview of Minor conducted by Jan Wilson and Lawrence County Children and Youth Services and that the interview took place at the Children's Advocacy Center at Jameson South. These circumstances would in all likelihood demonstrate to the magistrate that it was a legitimate investigation conducted by trained professionals. Considering these facts, as a whole, the Court finds that the Magistrate had a "substantial basis for … conclud[ing] that probable cause existed" to find photographs of a minor depicted in a "prohibited sexual act." Defendant's motion to suppress is thus denied to the extent that he argues that Gustafson's Application for Warrant and Affidavit does not establish possible evidence of prohibited acts.

Defendant also argues Gustafson lacked probable cause because the child was not considered a source of trustworthy information because he was only six-years-old. (Docket No. 37 at ¶ 14). The Court disagrees that a child is incompetent as a witness merely due to young age. *See Wheeler v. United States*, 159 U.S. 523 (1895). Indeed, pursuant to 18 U.S.C. § 3509(c) a child victim is presumed to be competent to testify and a "child's age alone is not a compelling reason" to permit a competency examination. 18 U.S.C. §§ 3509(c)(2), (4); *see also Commonwealth v. Hutchinson*, 25 A.3d 277, 291 n. 9 (Pa. 2011) *cert. denied*, 132 S. Ct. 2711 (U.S. 2012) (noting that pursuant to 18 U.S.C. § 3509(c)(2) a child is presumed competent to testify in a federal criminal trial and may only conduct a competency examination if the court determines that "compelling reasons exist.").

Other courts have addressed the issue more directly. This Court finds persuasive the decision in *Easton v. City of Boulder, Colo.*, 776 F.2d 1441 (10th Cir. 1985). In that case, the Tenth Circuit held that statements made by children aged 3 and 5 established probable cause

despite the fact that there were inconsistencies in their testimony because they did "nothing to undermine the solid core of the children's statements regarding the [location of the] assault and the location of the perpetrator's apartment." *Id.* at 1450. It reasoned that considering statements of young children as inherently suspect "is an entirely unacceptable point of view." *Id*. at 1449. This is because "[i]n a great many child molestation cases, the only available evidence that a crime has been committed is the testimony of children," and to discredit their testimony would benefit perpetrators from avoiding prosecution. *Id*. at 1549. The Eleventh Circuit has also allowed statements by minors of sexual abuse to be relied upon by police for establishing probable cause. *See Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998) (holding that the police could rely upon a three-year-old girl's allegations of sexual abuse told to both her mother and police).

Defendant relies upon the Ninth Circuit Court of Appeals' decision in *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009). *Stoot* distinguished *Easton,* finding that a single, young child's uncorroborated statements could not be the basis of the officer's determination of probable cause. *Stoot*, 582 F.3d at 921. *Stoot* is non-binding and factually distinguishable from the instant case. As the Court stated at the suppression hearing, Defendant's reliance on *Stoot* is not compelling.[5] Defense counsel also admitted that the case was "not exactly on point." (*See* Docket No. 46 at 10).

Even if *Stoot* can be considered on point, the facts of the case distinguish it from *Easton* and the case before this Court. First, the minor in *Stoot* was a four-year old who was being interviewed about an event that had occurred <u>eighteen months</u> prior. *Id*. Second, the minor in

---

[5] The Court explicitly advised Defendant's counsel at the close of arguments "I would really like some cases that are more closer to the mark. Not [§] 1983 cases out of the Ninth Circuit." (Docket No. 46 at 50). In Defendant's supplemental brief, after noting that the Court had asked for additional support, Defendant failed to provide new authority on the matter. (Docket No. 44 at 5-6).

*Stoot* changed her answers several times during the interview. *Id.* at 920. These inconsistencies related to material information such as saying that the man had never touched her inappropriately, but subsequently stating he had touched her inappropriately. *Id*. Third, the minor in *Stoot* confused the defendant with a completely different individual, which occurred immediately after denying that the defendant had any sexual contact with her. *Id.*

Here, Minor was six-years-old, two years older than the minor in *Stoot*. (Govt. Ex. 1 at 3). Additionally, <u>only two days</u> had passed after Minor spoke with the school official. (*Id*.). The Affidavit also shows the child gave consistent answers with regard to material information because the interview confirmed what the Minor told school officials; that Defendant took pictures of him without his underwear. (*Id*.). Further, there is no information that leads one to believe that the child ever mistook Defendant for any other individual; rather, Minor plausibly states that conduct took place at Defendant's house and with his computer.

Defendant now maintains in his supplemental brief that "accusations by demented persons must always be viewed with a certain skepticism," *Boyce v. Fernandez*, 77 F.3d 946, 949 (7th Cir. 1996), referring to Minor as "damaged goods."[6] (Docket No. 44 at 7; Docket No. 46 at 23). *Boyce* focused on an elderly 75 year old woman with senile dementia who granted the defendant a power of attorney; however, that individual subsequently took advantage of her. Even with dementia, the woman's accusations were particular enough for the court to find that they were not "senile fantasies." *Boyce*, 77 F.3d at 949. On the facts contained in the Affidavit, Minor has not been diagnosed with mental or psychological disorders which can be compared to dementia. Instead, Minor has been described as having behavioral problems, without any mention of mental or emotional problems.

---

[6] The Government objects to the defense's characterization of the minor as "damaged goods." The Court agrees that such reference is <u>wholly</u> inappropriate, especially when referring to a potential victim of child sexual abuse, and unworthy of the office of Federal Public Defender.

Defendant's additional supporting cases are also clearly inapplicable to the current circumstances. In *Cortez v. McCauley*, the court determined that probable cause should not have been found where an alleged statement by a two-year-old that was relayed to a nurse by the girl's mother without any subsequent interview or investigation. 478 F. 3d 1108, 1118 (10th Cir. 2007). A similar conclusion was reached in *United States v. Shaw*, where statements by a three-year-old would have been believable for purposes of establishing probable cause following a mother's allegation that her child indicated possible abuse, if further investigation had taken place. 464 F.3d 615, 624 (6th Cir. 2006). Instead, in this case, the steps taken following Minor's initial disclosure distinguish it from the authority relied on by Defendant because law enforcement immediately submitted Minor to additional questioning to corroborate his story prior to pursuing the Warrant.

In support of the Government's position regarding the credibility of children, it cites Pennsylvania decisions that upheld criminal convictions based upon a child victim's uncorroborated testimony. *Commonwealth v. Poindexter*, 646 A.2d 1211 (Pa. Super. 1994); *Commonwealth v. Trimble*, 615 A.2d 48 (Pa. Super. 1992).[7] The Court finds this argument persuasive and agrees: if a child's statement may be credible in order to satisfy evidence beyond a reasonable doubt, than it could also satisfy a warrant's probable cause standard. The Affidavit

---

[7]Before testifying in Pennsylvania, a trial court must submit a child witness under the age of fourteen by judicial inquiry to determine competency. *Rosche v. McCoy*, 397 Pa. 615, 621 (1959). The test set forth in *Rosche* includes:

> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Commonwealth v. Delbridge*, 578 Pa. 641, 662-663 (2003) (citing *Rosche*, 397 Pa. at 620-21) (emphasis in original). The record indicates that Minor would have satisfied this standard: (1) Minor was responsive to questions presented by interviewer; (2) similarity of statements given to school and Wilson showed his capacity to remember the occurrence at issue; (3) "Truth v. Lies" and "Morality" tasks completion, and Minor's response to only tell the truth showed his conscious duty to speak the truth. (*See* Govt. Ex. 2).

supplied the magistrate with ample reasons to find these statements reliable and credible as well: the officer viewing the interview had eighteen years of experience; the interviewer was a professional; the fact that Children and Youth Services was involved in the interview demonstrated the perceived seriousness of the accusation; and Minor restated conduct by Defendant that echoed his disclosures at school. (Govt. Ex. 1).

Having now rejected the Defendant's specific challenges to the Warrant and Affidavit, the Court finds that Defendant's challenge to a lack of probable cause must likewise be overruled. Considering the totality of the circumstances and for the reasons described above, the Court finds that the magistrate judge had a "substantial basis for a fair probability" that the Defendant had taken and possessed pictures of a minor engaged in a "prohibited sexual act" at his residence. *See Conley*, 4 F.3d at 1205. Thus, the warrant was supported by probable cause. Accordingly, Defendant's motion to suppress is denied to the extent that he contests the magistrate judge's probable cause determination.

### B. Good Faith Exception/Franks Hearing

The Court now turns to the parties' alternative arguments under the Good Faith exception to the warrant requirement and Defendant's request for a hearing to challenge the veracity of the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant maintains that Gustafson's search warrant was not exercised in good faith because he had "recklessly or willfully excluded and omitted" material facts from the Affidavit. (Docket No. 37 at ¶ 16). Primarily, he contends that Minor's conduct exhibited at the forensic interview should have led Gustafson to recognize and include in the Affidavit that Minor had "severe behavioral problems." (Docket No. 46 at 49). Therefore, the good faith exception would not apply and the fruits resulting from the search of Defendant's house would be inadmissible at trial. (*Id*.). Alternatively, Defendant avers this

preliminary showing of material omissions in the Affidavit entitles him to a *Franks* hearing to challenge the validity of the search warrant. (*Id.*). The Government counters that Defendant has not alleged with any particularity how Gustafson's omissions meet the standard to be considered reckless. (Docket No. 38 at 20).

For the Reasons stated below, the Court first holds that the good faith exception would only apply if the warrant was not supported by probable cause. Second, the Court finds that Defendant has failed to meet his burden to demonstrate to the Court that the Warrant and Affidavit contained material falsehoods or omitted material information such that the Court should convene a hearing under *Franks* to permit a validity challenge to the Warrant. The Court will briefly explain its reasoning for these rulings, in turn.

i.    Good Faith Exception

The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule—to deter police misconduct— would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919-20).

> Accordingly, a determination that the Fourth Amendment has been violated does not necessarily require application of the exclusionary rule. It applies when it serves "to safeguard Fourth Amendment rights ... through its deterrent effect." To determine whether to apply the rule in a particular case, we weigh the benefits of the rule's deterrent effects against the costs of exclusion, which include "letting guilty and possibly dangerous defendants go free." Because of the high social costs of excluding

evidence in a criminal case, the Supreme Court has instructed that the exclusionary rule should only be applied when "police conduct [is] ... sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Accordingly, we apply the rule when police conduct is "deliberate, reckless, or grossly negligent," or when it will deter "recurring or systemic negligence." Put another way, isolated negligent acts on the part of the police do not warrant application of the exclusionary rule.

*Tracy*, 597 F.3d at 151 (internal citations omitted).

The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307-308 (citing *Leon*, 468 U.S. at 922). The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Tracey*, 597 F.3d at 151 (citations omitted). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent." *Id*. (quoting *Herring v. United States*, 55 U.S. 135 (2009)). Against this backdrop, the Court now turns to Defendant's request for a *Franks* hearing.

ii.    *Franks* Hearing

Defendant's challenge based on the first factor requires further discussion. "[A] criminal defendant has the right to challenge the truthfulness of factual statements made in the affidavit of

19

probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Franks*, 438 U.S. at 171). In *Franks*, "the Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." *Id.* The Court of Appeals has recognized that the first step under *Franks* requires the defendant to "make a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Id.* (citing *Franks*, 438 U.S. at 171). Further,

> [i]n order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.

*Id.* at 383, n.8 (quoting *Franks*, 438 U.S. at 171). If the Defendant makes his preliminary showing, the Court has the discretion to hold a *Franks* hearing and permit a further challenge to the Affidavit.

> At the hearing, the defendant must ultimately prove by a preponderance of the evidence that [*sic*]: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination.
>
> …
>
> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, … : (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.
>
> …

In the end, the defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the original probable cause finding. [The Court of Appeals has] recognized a distinction between misrepresentations and omissions for purposes of determining whether deficiencies in the affidavit are "material." When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit."

*Yusuf*, 461 F.3d at 383-84 (internal citations omitted). If the defendant is able to ultimately meet this burden, "the Fourth Amendment requires that ... the fruits of the search [must be] excluded." *United States v. Zareck*, 2010 WL 5053916 at *17 (W.D.Pa. 2010) (quoting *Yusuf*, 461 F.3d at 383) (internal citations omitted).

In his motion to suppress, Defendant relies upon *Franks*, 438 U.S. at 156, arguing that "Gustafson omits material facts from the Affidavit, and that he does so knowingly, willfully and/or with reckless disregard for the truth." (Docket No. 37 at ¶ 10). At the same time, Defendant maintains that the report from the Forensic Interview was evidence enough to show that Gustafson omitted alleged material information. (Docket No. 46 at 39). The Government counters that Defendant failed to meet his burden of showing that Gustafson knowingly and deliberately, or with reckless disregard for the truth omitted material statements. (*Id.* at 27). As such, the Government argues that Defendant did not meet his burden under *Franks* and *Yusuf* to make a "substantial preliminary showing" that the Affidavit contained any deliberate falsehoods or omissions prior to or at the motion hearing that would be material to the probable cause determination. *See Yusuf*, 461 F.3d at 383. It argues that Defendant has failed to show with specific proof that Gustafson did not believe what he conveyed in his written Affidavit. (Docket No. 46 at 46).

As to the parties' specific arguments, Defendant contends there were four observations from the Forensic Interview that were material and omitted by Gustafson knowingly, willfully or with reckless disregard for the truth. He represents that the most important material and relevant omission by Gustafson was his failure to mention that Minor has "rather, severe behavioral problems."[8] (Docket No. 46 at 30). Related to this contention, Defendant argues that Gustafson should have disclosed that Brighter Visions was a school for children with special needs. (*Id.* at 32). Defendant next advances that Gustafson's omission that Minor never stated at the forensic interview that Defendant tickled his private areas was material. (*Id.* at 41-42). Last, Defendant maintains that Minor's brief confusion regarding whether Haley lived with him was relevant and material information. (Docket No. 37 at ¶ 12).[9]

The Government suggests that these facts are neither material nor were they recklessly omitted. (Docket No. 39 at 15-16). Rather, the Defendant must first "make a substantial showing" that "affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" for the court to hold a *Franks* hearing. *Yusuf*, 461 F.3d at 383. Hence, the Government argues that Defendant's belief that a comparison of the Affidavit to the Forensic Interviewer's notes shows that Gustafson "knowingly or deliberately" omitted such information is mistaken. (Docket No. 46 at 30). At the hearing, the Court also specifically asked defense counsel how Gustafson acted recklessly or the magistrate acted inappropriately, but Defendant never addressed this question with any factual or legal support in his supplemental brief. (*Id.* at 37).

---

[8] At the hearing, defense counsel initially stated that Wilson's report quoted the child as having "rather severe behavioral problems." (Docket No. 46 at 30). However, Defense counsel then mislabeled Minor as having "severe emotional problems" several times throughout the hearing. (*See* Docket No. 46 at 31, 32, 36, 49).
[9] The Court notes that Government does not make this argument, but Gustafson also omitted the results from "Truth vs. Lies" and "Morality" tasks from the interview. This information, if added, would have served to help establish Minor's credibility in the Affidavit. (*See* Docket No. 46 at 34).

Without presenting evidence that Gustafson knowingly and deliberately omitted material information, the only position that Defendant could successfully take is that the Affidavit was made in reckless disregard for the truth. The Third Circuit has agreed with the District of Columbia District Court's interpretation that "the Supreme Court in *Franks* gave no guidance concerning what constitutes a reckless disregard for the truth in Fourth Amendment cases, except to state that negligence or innocent mistake is insufficient." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *United States v. Davis*, 617 F.2d 677, 694 (D.C.Cir. 1979) (internal citations omitted)). To determine whether an omission would qualify as reckless disregard for the truth, the Third Circuit follows the Eighth Circuit's common sense approach that "omissions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 787 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)) (holding officer acted with reckless disregard by failing to inform magistrate that drug sniffing dog did not go into "alert" even though he stated the dog showed "interest" in defendant's bag). In *Wilson*, it was found that significant height differential and the failure by an eye-witness to properly identify the Defendant was information the judge would wish to know, but the victim's apparent ethnicity or slight variations in appearance on the photographic line-up were not important. *Id.* at 788.

In light of this standard set forth by this Circuit, the Court finds that Defendant has failed to show that any of the omissions of observations from Minor's interview were made in reckless disregard for the truth. First, there is no indication in the record that Minor's "severe behavioral problems" would be akin to something that the magistrate "would wish to know." Second, it was the interviewer's opinion as recorded in the report that Minor exhibited "severe behavioral

problems," not Gustafson's. (Govt. Ex. 2 at 1). Both Gustafson and Wilson have training and experience in this setting, but used their respective expertise for different purposes during the interview. (Govt. Ex. 1 at 3). Minor's actions at the interview as observed by Gustafson may have seemed no different to him than any other six-year-old boy when being questioned by a stranger in a hospital. Just as the victim's apparent ethnicity was not found to be important to the judge in *Wilson*, 212 F.3d at 788, the behavior of a six year-old potential child victim in making statements to authorities should not be at issue in the current case.

Gustafson's failure to specify that Brighter Visions was a school for children with behavioral problems would also not be something that the judge would want to know. The Court, however, notes that the school is located in the Magistrate's jurisdiction; hence, there is a fair chance that the school's specific purpose is well known in the community. (Docket No. 46 at 36). Regardless, there is no difference between Gustafson including that Minor had "severe behavioral issues" and that the school taught such children. The analysis is the same. It is not a fact pertinent to the magistrate's determination.

Defendant's next contention is that Gustafson should have included in the Affidavit that Minor never stated that Defendant tickled his privates at the interview. (*Id.* at 42). Defendant admits that the child never affirmatively denied this conduct. (*Id.* at 43). However, there is an inference through the reading of two sentences from the Affidavit that Minor never stated in the interview that Defendant tickled his privates.

> This interview was being conducted by Jan WILSON and Lawrence County Children and Youth Services following the juvenile disclosing to school officials at Brighter Visions on 11.30.09 that while he was at Patrick KOFALT's house, the subject would tickle his private areas and take nude pictures of him.

> During the interview, the juvenile confirmed that KOFALT took pictures of him in his underwear and without his underwear. He also stated that KOFALT showed him pictures of nude people on his computer.

(Govt. Ex. 1 at 1). Gustafson clearly states which part of the initial allegation was confirmed by the interview (i.e., the taking of nude pictures). He then sets out new information from the interview that the judge would wish to know – Defendant showed him nude pictures on the computer. Gustafson carefully wrote these statements to avoid confusion as to where Minor made each statement. It was, therefore, unnecessary for Gustafson to state that the child never confirmed having his private area touched, especially because it appears that he had not been asked this specific question by the interviewer. (Govt. Ex. 2). A material omission in an Affidavit from law enforcement must be more egregious, such as an eye-witness failing to properly identify the defendant, not a witness failing to mention all of Defendant's conduct in a subsequent interview. *Wilson*, 212 F.3d at 788. Finally, this Affidavit was meant to establish probable cause that <u>child pornography</u> would be found at Defendant's residence rather than an Affidavit to find evidence of child molestation or sexual abuse. While some may argue that it is more likely that an adult who molests a child would have a propensity to possess child pornography, the inappropriate touching of a Minor is not a necessary element of an 18 Pa.C.S. 6312 violation and is not material to probable cause.

The last alleged omission is that Minor stated briefly that Haley lived with him, before correcting himself. There is no evidence regarding who Haley is, other than she is a mother. (Govt. Ex. 2 at 1). She has not been referenced in any other context. No support has been offered as to why "any reasonable person would have known that [this misstatement] was the kind of thing the judge would wish to know." *Wilson*, 212 F.3d at 788. Yes, he incorrectly answered a question, but he immediately corrected himself without any further questioning. (*Id*.). There were

no other instances of confusion by the child. Hence, the Court does not find this argument convincing.

The second "substantial showing" that Defendant must make in order for the Court to hold a *Franks* hearing is that "such statements or omissions were material, or necessary, to the probable cause determination." *Yusuf*, 461 F.3d at 383. The Third Circuit utilizes a separate inquiry for determining whether an omission is material; the court removes the "falsehood created by an omission by supplying the omitted information to the original affidavit." *Id.* at 383-384 (citing *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir. 1997)). The Court then determines if probable cause is lacking based upon an analysis of the newly supplemented affidavit. *Yusuf*, at 384. This analysis is based upon the "totality of the circumstances" set forth in the affidavit to be able to find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 390 (quoting *Gates*, 462 U.S. at 235). However, the Third Circuit and the United States Supreme Court have advised against "overly compartmentalizing the determination of probable cause." *Yusuf*, at 390 (citations omitted). This caution requires the Court to "consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." *Id.* (citing *United States v. Arvizu,* 534 U.S. 266, 275 (2002)).

In this Court's opinion, even if the Affidavit were to include all of the omissions that Defendant contends are pertinent, it would still be reasonable for a Magistrate to conclude that there was a "fair probability that contraband or evidence of a crime [child pornography] will be found [at Defendant's residence]." *Gates*, 462 U.S. at 235. None of Defendant's argued omissions would rebut the Magistrate's reasonable belief based on Gustafson's Affidavit that

child pornography was most likely at his residence in predominantly electronic format. These omissions do not justify Defendant's most egregious conduct as described in the Affidavit; that Minor had twice stated that Defendant took nude pictures of him. (Govt. Ex. 1). As noted, this information was also recovered during an interview conducted by trained professionals, including state police and Child and Youth Services.

A child's behavioral problems or attendance at a special needs school would not undermine Minor's credibility, especially because his statements concerning Defendant's conduct were consistent. Further, only two days had passed between Minor's first disclosure and the forensic interview, reducing the risk of error which may result by a significant lapse of time. Those statements and the child's answer that Defendant showed him naked people on the computer would be sufficient for the Magistrate to find probable cause for the crime at issue. The Magistrate would not even need any information regarding Defendant tickling Minor's privates. Adding that Minor did not repeat that assertion at the interview would make no difference. That statement, while possibly offering support, does not have a direct bearing on whether the child pornography could be found at the residence. Finally, there is still no reason why the Minor's statement regarding Haley would be material to establishing probable cause.

For these reasons, Defendant has failed to meet his burden to demonstrate that the Affidavit contained false statements or omitted information that "were material, or necessary, to the probable cause determination" of the magistrate judge. *Yusuf*, 461 F.3d at 383. As such, Defendant has not established that he is entitled to a *Franks* hearing and has not presented credible evidence that would undermine the presumptive validity of the warrant. 438 U.S. at 171. Therefore, the good faith exception to the warrant requirement applies here and provides an alternative basis to deny the pending motion to suppress.

IV. CONCLUSION

Based on the foregoing, Defendant's motion to suppress [37] is DENIED. An appropriate

Order follows.


                                        _s/Nora Barry Fischer_
                                        Nora Barry Fischer
                                        United States District Judge

Date:   November 2, 2012

cc/ecf:  All counsel of record.